## UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEBRASKA
## LINCOLN DIVISION

| | |
|---|---|
| **EZEKIEL D. POTTER**, on behalf of himself and all others similarly situated, | |
| Plaintiff, | Case No. _____ |
| v. | |
| **MIDWEST BANK,** | |
| Defendant. | |

## CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Ezekiel D. Potter ("Plaintiff"), by counsel, brings this Class Action Complaint against Defendant Midwest Bank ("Defendant"), and alleges as follows:

### INTRODUCTION

1.      This is a civil action seeking monetary damages, restitution, and injunctive and declaratory relief from Defendant arising from its improper assessment and collection of multiple $31 fees on an item.

2.      Plaintiff and other members of Defendant have been injured by Defendant's practices. Plaintiff, individually and on behalf of the class of individuals preliminarily defined below, brings claims for Defendant's breach of contract, including the duty of good faith and fair dealing and unjust enrichment.

### PARTIES

3.      Plaintiff is a citizen and resident of Des Moines, Iowa and has had a checking account with Defendant at all times material hereto.

4.      Defendant is a Nebraska bank that provides full banking services. Its principal place of business is in Pierce, Nebraska. Defendant has approximately $500 million in assets and

provides banking services to thousands of customers, including Plaintiff and members of the putative Class.

**JURISDICTION AND VENUE**

5.      This Court has original jurisdiction over this putative class action lawsuit pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. §§ 1332(d)(2) & (6), because the aggregate sum of the claims of the members of the putative Class exceeds $5 million, exclusive of interest and costs, because Plaintiff brings this action on behalf of a proposed Class that is comprised of over one hundred members, and because at least one of the members of the proposed Class is a citizen of a different state than Defendant.

6.      This Court also has original jurisdiction under 28 U.S.C. §§ 1332 because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States.

7.      This Court has personal jurisdiction over Defendant because Defendant conducted business in and throughout this District at all times material hereto.

8.      Defendant regularly and systematically conducts business and provides retail banking services in this state and provides retail banking services to customers in this state. As such, it is subject to the jurisdiction of this Court.

9.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) and (2) because Defendant resides in this District and a substantial part of the events or omissions giving rise to Plaintiff's claim occurred in this District. Venue is further proper pursuant to 28 U.S.C. § 1391(b)(3) because Defendant is subject to personal jurisdiction in this District.

**I.      FACTUAL BACKGROUND AND GENERAL ALLEGATIONS**

10.     In 2021, the largest financial institutions in America charged customers almost $11 billion in overdraft fees. Customers who carried an average balance of less than $350 paid 84 percent of these fees. Why Poverty Persists in America (New York Times , Mar. 9, 2023), https://www.nytimes.com/2023/03/09/magazine/poverty-by-america-matthew-desmond.html.

11.     The New York Attorney General recently asked industry leading banks to end the assessment of all overdraft fees by the summer of 2022. *NY Attorney General asks banks to end overdraft fees*, Elizabeth Dilts Marshall, Reuters (April 6, 2022).

12.     Defendant unlawfully maximizes its already profitable fees through its deceptive and contractually-prohibited practice of charging multiple NSF fees, or an NSF fee followed by an overdraft fee, on an item.

13.     Unbeknownst to consumers, when Defendant reprocesses an electronic payment item, ACH item, or check for payment after it was initially rejected for insufficient funds, Defendant chooses to treat it as a new and unique item that is subject to yet another fee. But Defendant's contract never states that this counterintuitive and deceptive result could be possible and, in fact, says nothing at all about how overdraft fees or NSF fees are assessed.

14.     The Federal Deposit Insurance Corporation (the "FDIC") has expressed concern with the practice of assessing multiple fees on an item. In 2012, the FDIC determined that one bank's assessment of more than one NSF Fee on the same item was a "deceptive and unfair act." *In the Matter of Higher One, Inc., Consent Order*, Consent Order, FDIC-1 1-700b, FDIC-1 1-704k, 2012 WL 7186313.

15.     The FDIC also recently recommended that the multiple fee practice be halted entirely. *See* Barbarino, Al. "FDIC Warns Banks About Risks of Bounced Check Fees." Law360,

Aug. 19, 2022, *available at* https://www.law360.com/articles/1522501/fdic-warns-banks-about-risks-tied-to-bounced-check-fees.

16.     And, in its latest issue of Consumer Compliance Supervisory Highlights, the FDIC again addressed the charging of multiple non-sufficient funds fees for transactions presented multiple times against insufficient funds in the customer's account. See FDIC Consumer Compliance Supervisory Highlights, Mar. 2022, available at https://www.fdic.gov/news/financial-institution-letters/2022/fil22014.html. FDIC examiners have scrutinized this issue in recent exams, with some exams remaining open pending resolution of the issue.

17.     In the Supervisory Highlights, the FDIC discussed potential consumer harm from this practice in terms of both deception and unfairness under the Federal Trade Commission Act Section 5's prohibition on unfair or deceptive acts or practices. The FDIC stated that the "failure to disclose material information to customers about re-presentment practices and fees" may be deceptive. *Id*. at 8.

18.     During 2021, the FDIC identified consumer harm when financial institutions charged multiple NSF fees for the re-presentment of unpaid transactions. Terms were not clearly defined and disclosure forms did not explain that the same transaction might result in multiple NSF fees if re-presented. While case-specific facts would determine whether a practice is in violation of a law or regulation, the failure to disclose material information to customers about re-presentment practices and fees may be deceptive. This practice may also be unfair if there is the likelihood of substantial injury for customers, if the injury is not reasonably avoidable, and if there is no countervailing benefit to customers or competition. For example, there is risk of unfairness if multiple fees are assessed for the same transaction in a short period of time without sufficient notice or opportunity for consumers to bring their account to a positive balance. *Id*.

19.     In its staff analysis of the issue, the American Bankers Association recommended that banks review their deposit account agreement to ensure it states clearly that a separate NSF fee will be assessed whenever the same item is resubmitted against insufficient funds. ABA also encouraged banks, if scrutinized by a regulator, to explain the significant logistical challenges with identifying items that have been resubmitted by the merchant for payment against insufficient funds. ABA is updating its staff analysis of this issue to reflect the Supervisory Highlights. *See* ABA Banking Journal, *FDIC provides guidance on multiple NSF fees for re-presented items*, April 1, 2022, *available at* https://bankingjournal.aba.com/2022/04/fdic-provides-guidance-on-multiple-nsf-fees-for-re-presented-items/.

20.     Further, this abusive multiple fee practice is not universal in the financial services industry. Indeed, major banks like Chase—the largest consumer bank in the country—do not undertake the practice of charging more than one fee on the same item when it is reprocessed. Instead, Chase charges one fee even if an item is reprocessed for payment multiple times.

21.     Defendant, however, engages in this abusive and deceptive practice in violation of its own contract and against the reasonable expectations of its customers.

## I.   DEFENDANT ASSESSES MULTIPLE FEES ON AN ITEM.

22.     Plaintiff had a Defendant checking account at all times material hereto. The fees that Defendant is permitted to assess are governed by its Fee Schedule attached as **Exhibit A**. The Fee Schedule allows Defendant to take certain steps when paying a check, electronic payment item, or ACH item when the accountholder does not have sufficient funds to cover it. Specifically, Defendant may (a) pay the item and charge a $31 fee; or (b) reject the item and charge a $31 fee.

23.     In contrast to the Contract, however, Defendant regularly assesses two or more $31 fees on an item.

24.     Unbeknownst to consumers, when Defendant reprocesses an electronic payment item, ACH item, or check for payment after it was initially rejected for insufficient funds, Defendant chooses to treat it as a new and unique item that is subject to yet another fee. But the Fee Schedule never states that this counterintuitive and deceptive result could be possible and, in fact, promises the opposite.

**A. The Imposition of Multiple Fees on an Item Violates Defendant's Express Promises and Representations**

25.     Plaintiff has had a Defendant checking account at all relevant times.

26.     The Fee Schedule states:

> FEES-The following charges may be assessed against your account:
>
> $ 3.00 Paper Statement Fee
> $ 28.00 per item-Overdraft Charge
> An overdraft charge applies to overdrafts created by check, in-person withdrawal or other electronic means
> You will not be charged more than 8 overdraft item fees in a single business day, which does not include the continuous overdraft fee
> $ 28.00 per item-Returned Check Charge
> A daily $5.00 Continuous Overdraft Charge will be assessed after the 2nd day that the account has a negative balance and will continue until the account shows a positive balance.

Ex. A.

27.     The Fee Schedule therefore promises that an "Overdraft Charge" (singular) or a "Returned Check Charge" will be assessed in the amount of "$28.00 per item."[1]

28.     The same "item" on an account cannot conceivably become a new one when it is rejected for payment then reprocessed, especially when—as here—Plaintiff took no action to resubmit it.

---

[1] The fee has since been raised to $31 per item.

29.     There is zero indication anywhere in the Fee Schedule that the same "item" is eligible to incur multiple fees.

30.     Even if Defendant reprocesses an instruction for payment, it is still the same "item." Its reprocessing is simply another attempt to effectuate an account holder's original order or instruction.

31.     The Fee Schedule never discusses a circumstance where Defendant may assess multiple fees for a single check, electronic payment item, or ACH item that was returned for insufficient funds and later reprocessed one or more times and returned again.

32.     In sum, Defendant promises that one fee will be assessed on an item, and this term must mean all iterations of the same instruction for payment. As such, Defendant breached the Fee Schedule when it charged more than one fee per item.

33.     Reasonable consumers understand any given authorization for payment to be one, singular "item," as that term is used in the Fee Schedule.

34.     Taken together, the representations and omissions identified above convey to customers that all submissions for payment of the same item will be treated as the same "item," which Defendant will either authorize (resulting in an overdraft item) or reject (resulting in a returned item) when it decides there are insufficient funds in the account. Nowhere do Defendant and its customers agree that Defendant will treat each reprocessing of a check, electronic payment item, or ACH item as a separate item, subject to additional fees.

35.     Customers reasonably understand, based on the language of the Fee Schedule, that Defendant's reprocessing of checks, electronic payment items, and ACH items are simply additional attempts to complete the original order or instruction for payment, and as such, will not trigger fees. In other words, it is always the same item.

36.     Banks and credit unions like Defendant that employ this abusive practice require their accountholders to expressly agree to it—something Defendant here did not do.

37.     Defendant's Fee Schedule provides no such authorization, and actually promises the opposite— Defendant may charge, at most, a fee, per item.

**B.  Plaintiff's Experience**

38.     In support of Plaintiff's claim, Plaintiff offers an example of a fee that should not have been assessed against Plaintiff's checking account. As alleged below, Defendant: (a) reprocessed a previously declined item; and (b) charged a fee upon reprocessing.

39.     On or around November 9, 2022, Plaintiff attempted a payment in the amount of $1,050 (CHK# 1169).

40.     Defendant rejected payment of that item and charged Plaintiff a $31 fee for doing so.

41.     Unbeknownst to Plaintiff and without Plaintiff's request to Defendant to reprocess the item, on or around Nov. 15, 2022, Defendant processed the same item again, rejected the item again, and charged Plaintiff a second $31 fee for doing so.

42.     *In sum, Defendant charged Plaintiff $62 in fees on an item.*

43.     Plaintiff understood each of these payments to be a single item as is laid out in the Fee Schedule, capable of receiving, at most, a single fee if Defendant returned it, or a single fee if Defendant paid it.

44.     The improper fees charged by Defendant were not errors, but rather intentional charges made by Defendant as part of its standard processing of items.

45.     Plaintiff therefore had no duty to report the fees as errors.

46.     Moreover, any such reporting would have been futile as Defendant had made a decision to charge the fees in this specific manner to maximize profits at the expense of members.

## II.     The Imposition of These Fees Breaches Defendant's Duty of Good Faith and Fair Dealing

47.     Parties to a contract are required not only to adhere to the express terms of the contract but also to act in good faith when they are invested with a discretionary power over the other party.  This creates an implied duty to act in accordance with account holders' reasonable expectations and means that the bank or credit union is prohibited from exercising its discretion to enrich itself and gouge its customers.  Indeed, the bank or credit union has a duty to honor transaction requests in a way that is fair to its customers and is prohibited from exercising its discretion to pile on even greater penalties on its account holders.

48.     Here—in the adhesion agreements Defendant foisted on Plaintiff and its other customers—Defendant has provided itself numerous discretionary powers affecting customers' accounts.  But instead of exercising that discretion in good faith and consistent with consumers' reasonable expectations, Defendant abuses that discretion to take money out of consumers' accounts without their permission and contrary to their reasonable expectations that they will not be charged multiple fees on an item.

49.     Defendant exercises its discretion in its own favor—and to the prejudice of Plaintiff and its other customers—when it assesses fees in this manner.  Defendant also abuses the power it has over customers and their accounts and acts contrary to their reasonable expectations under the contract.  This is a breach of Defendant's implied covenant to engage in fair dealing and to act in good faith.

50.     Further, Defendant maintains complete discretion not to assess fees at all.  Instead, Defendant always charges these fees.  By always exercising its discretion in its own favor—and

to the prejudice of Plaintiff and other customers, Defendant breaches the reasonable expectations of Plaintiff and other customers and, in doing so, violates its duty to act in good faith.

51.     It was bad faith and totally outside Plaintiff's reasonable expectations for Defendant to use its discretion in this way.

52.     When Defendant charges improper fees in this way, Defendant uses its discretion to define the meaning of key terms in an unreasonable way that violates common sense and reasonable consumers' expectations.  Defendant uses its contractual discretion to set the meaning of those terms to choose a meaning that directly causes more fees.

## CLASS ALLEGATIONS

53.     Plaintiff brings this action individually and as a class action on behalf of the following proposed Class:

> All checking accountholders of Defendant who, during the applicable statute of limitations, were assessed multiple fees on an item.

54.     Plaintiff reserves the right to modify or amend the definition of the proposed Class before the Court determines whether certification is appropriate.

55.     Excluded from the Class are Defendant, its parents, subsidiaries, affiliates, officers, directors, legal representatives, successors, and assigns; any entity in which Defendant has a controlling interest; all customers members who make a timely election to be excluded; governmental entities; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

56.     The members of the Class are so numerous that joinder is impractical. The Class consists of thousands of members, the identities of whom are within the exclusive knowledge of Defendant and can be ascertained only by resort to Defendant's records.

57.     Plaintiff's claims are typical of the claims of the Class in that Plaintiff, like all members of the Class, was charged improper fees. Plaintiff, like all members of the Class, has been damaged by Defendant's misconduct in that they have been assessed unlawful fees. Furthermore, the factual basis of Defendant's misconduct is common to all members of the Class and represents a common thread of deceptive and unlawful conduct resulting in injury to all members of the Class. Plaintiff has suffered the harm alleged and have no interests antagonistic to the interests of any other members of the Class.

58.     The questions in this action are ones of common or general interest such that there is a well-defined community of interest among the members of the Class. These questions predominate over questions that may affect only individual class members because Defendant has acted on grounds generally applicable to the Class.

59. Among the questions of law and fact common to the Class include whether Defendant:

- Assessed multiple fees on an item;

- Breached its contract with Plaintiff and members of the Class by assessing multiple fees on an item;

- Breached the covenant of good faith and fair dealing imposed on it; and

- Was unjustly enriched when it collected multiple fees on an item.

60.     Other questions of law and fact common to the Class include the proper method or methods by which to measure damages, and the declaratory and injunctive relief to which the Class is entitled.

61.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Since the amount of each individual Class member's claim is small relative to the complexity of the litigation, no Class member could afford to seek legal

redress individually for the claims alleged herein. Therefore, absent a class action, the members of the Class will continue to suffer losses and Defendant's misconduct will proceed without remedy.

62.     Even if Class members themselves could afford such individual litigation, the court system could not. Given the complex legal and factual issues involved, individualized litigation would significantly increase the delay and expense to all parties and to the Court. Individualized litigation would also create the potential for inconsistent or contradictory rulings. By contrast, a class action presents far fewer management difficulties, allows for the consideration of claims which might otherwise go unheard because of the relative expense of bringing individual lawsuits, and provides the benefits of adjudication, economies of scale, and comprehensive supervision by a single court.

63.     Plaintiff is committed to the vigorous prosecution of this action and have retained competent counsel experienced in the prosecution of class actions, particularly on behalf of consumers and against financial institutions. Accordingly, Plaintiff is an adequate representative and will fairly and adequately protect the interests of the Class.

64.     Plaintiff suffers a substantial risk of repeated injury in the future. Plaintiff, like all members of the Class, is at risk of additional improper fees. Plaintiff and the Class are entitled to injunctive and declaratory relief as a result of the conduct complained of herein. Money damages alone could not afford adequate and complete relief, and injunctive relief is necessary to restrain Defendant from continuing to commit its illegal actions.

### FIRST CLAIM FOR RELIEF

**Breach of Contract, Including Breach of the Covenant of Good Faith and Fair Dealing**
**(On Behalf of Plaintiff and the Class)**

65.     Plaintiff incorporates by reference the preceding paragraphs.

66.     Plaintiff and Defendant have contracted for banking services.

67.     All contracts entered by Plaintiff and the Class are identical or substantively identical because Defendant's form contracts were used uniformly.

68.     Defendant has breached the express terms of its own agreements as described herein.

69.     Under Nebraska law, good faith is an element of every contract between banks and/or credit unions and their customers because banks and credit unions are inherently in a superior position to their checking account holders and, from this superior vantage point, they offer customers contracts of adhesion, often with terms not readily discernible to a layperson.

70.     Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit—not merely the letter—of the bargain. Put differently, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form. Evading the spirit of the bargain and abusing the power to specify terms constitute examples of bad faith in the performance of contracts.

71.     Subterfuge and evasion violate the obligation of good faith in performance even when an actor believes their conduct to be justified. Bad faith may be overt or may consist of inaction, and fair dealing may require more than honesty. Examples of bad faith are evasion of the spirit of the bargain and abuse of a power to specify terms.

72.     Defendant abused the discretion it granted to itself when it charged multiple fees on an item.

73.     In these and other ways, Defendant violated its duty of good faith and fair dealing.

74.    Defendant willfully engaged in the foregoing conduct for the purpose of (1) gaining unwarranted contractual and legal advantages; and (2) unfairly and unconscionably maximizing fee revenue from Plaintiff and other members of the Class.

75.    Plaintiff and members of the Class have performed all, or substantially all, of the obligations imposed on them under the agreements.

76.    Plaintiff and members of the Class have sustained damages as a result of Defendant's breaches of the parties' contracts and breaches of contract through violations of the covenant of good faith and fair dealing.

## SECOND CLAIM FOR RELIEF
### (Unjust Enrichment)
### (On behalf of Plaintiff and the Class)

77.    Plaintiff incorporates the preceding allegations by reference as if fully set forth herein.

78.    Plaintiff, individually and on behalf of the Class, asserts a common law claim for unjust enrichment. This claim is brought solely in the alternative to Plaintiff's breach of contract claim and applies only if the parties' contracts are deemed unconscionable or otherwise unenforceable for any reason. In such circumstances, unjust enrichment will dictate that Defendant disgorge all improperly assessed fees.

79.    By means of Defendant's wrongful conduct alleged herein, Defendant knowingly assessed fees upon Plaintiff and the members of the Class that are unfair, unconscionable, and oppressive.

80.    Defendant knowingly received and retained wrongful benefits and funds from Plaintiff and the members of the Class. In so doing, Defendant acted with conscious disregard for the rights of Plaintiff and the members of the Class.

81.     As a result of Defendant's wrongful conduct as alleged herein, Defendant has been unjustly enriched at the expense of, and to the detriment of, Plaintiff and the members of the Class.

82.     Defendant's unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein.

83.     Under the common law doctrine of unjust enrichment, it is inequitable for Defendant to retain the benefits it received, and is still receiving, without justification, from the imposition of fees on Plaintiff and members of the Class in an unfair, unconscionable, and oppressive manner. Defendant's retention of such funds under circumstances making it inequitable to do so constitutes unjust enrichment.

84.     The financial benefits derived by Defendant rightfully belong to Plaintiff and the members of the Class. Defendant should be compelled to disgorge in a common fund for the benefit of Plaintiff and members of the Class all wrongful or inequitable proceeds collected by Defendant. A constructive trust should be imposed upon all wrongful or inequitable sums received by Defendant traceable to Plaintiff and the members of the Class.

85.     Plaintiff and the members of the Class have no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff and the Class demand a jury trial on all claims so triable and judgment including the following:

A.  Certification for this matter to proceed as a class action under Fed. R. Civ. P. 23;

B.  Designation of Plaintiff as Class Representative, and designation of the undersigned as Class Counsel;

C.  Restitution of all improper fees paid to Defendant by Plaintiff and the Class, because of the wrongs alleged herein in an amount to be determined at trial;

D.  Actual damages in an amount according to proof;

E.  Statutory damages in accordance with Nebraska law;

F.  Pre- and post- judgment interest at the maximum rate permitted by applicable law;

G.  Costs and disbursements assessed by Plaintiff in connection with this action, including reasonable attorneys' fees pursuant to applicable law;

H.  Attorneys' fees under the common fund doctrine and all other applicable law;

I.  Injunctive and declaratory relief prohibiting Defendant from engaging in the practices outlined herein and declaring such practices unlawful; and

J.  Such other relief as this Court deems just and proper.

K.  That this matter be heard by the Lincoln Division.

## JURY DEMAND

Plaintiff, by counsel, demands trial by jury.

Dated:  April 21, 2023

BY: */s/Zachary W. Lutz-Priefert*_____
 Frederick D. Stehlik, #15481
 Zachary W. Lutz-Priefert
 GROSS WELCH MARKS CLARE, P.C., L.L.O.
 1500 Omaha Tower
 Omaha, Nebraska 68124
 Telephone: 402-392-1500
 fstehlik@gwmclaw.com
 zlutzpriefert@gwmclaw.com

 Lynn A. Toops*
 COHEN & MALAD, LLP
 One Indiana Square, Suite 1400
 Indianapolis, IN 46204
 Telephone: 317-636-6481
 Facsimile: 317-636-2593
 ltoops@cohenandmalad.com

 J. Gerard Stranch, IV*
 STRANCH, JENNINGS & GARVEY, PLLC
 223 Rosa L. Parks Avenue, Suite 200
 Nashville, Tennessee 37203
 Telephone: (615) 254-8801
 Facsimile: (615) 255-5419
 gstranch@stranchlaw.com

 Christopher D. Jennings*
 JOHNSON FIRM
 610 President Clinton Avenue, Suite 300
 Little Rock, Arkansas 72201
 Telephone: (501) 372-1300
 chris@yourattorney.com

 *Attorneys for Plaintiff and the Putative Class*

 * To Seek Admission *Pro Hac Vice*

Midwest Free Checking #

Addendum to TSD



**EXHIBIT**
**A**

Free Monthly E-Statements

FEES-The following charges may be assessed against your account:

$ 3.00 Paper Statement Fee
$ 28.00 per item-Overdraft Charge
An overdraft charge applies to overdrafts created by check, in-person withdrawal or other electronic means
You will not be charged more than 8 overdraft item fees in a single business day, which does not include the continuous overdraft fee
$ 28.00 per item-Returned Check Charge
A daily $5.00 Continuous Overdraft Charge will be assessed after the 2nd day that the account has a negative balance and will continue until the account shows a positive balance.

$ 1.00 Automatic Transfer/Overdraft Protection
$ 4.00 Deposit Item Return Charge
$ 20.00 Stop Item Charge per request for a six-month stop period
$ 20.00 Stop Item Charge-Renewal Request
$ 20.00 Hold Charges (30 days)
$ 20.00 Levies and Garnishments
$ 20.00 per hour ($20.00 minimum) Record Searches/Statement Reconstruction
$ 20.00 per hour ($20.00 minimum) Checkbook Balancing
$ 10.00 Collection Items \ each
$ 15.00 Outgoing Wire Transfers
$ 10.00 Incoming Wire Transfers
$ 50.00 International Wire Transfers
$ 5.00 Cashier Checks/Bank Money Orders
$ 3.00 Personal Money Orders
$ 5.00 Replacement Debit Card Fee
$ 10.00-$100.00 annually-Safe Deposit Box Rental
$ 20.00 Safe Deposit Box Key Replacement
Our costs plus $20.00 Drilling Safe Deposit Box
$ 1.00 Inhouse Manual Bill Payment
$ 5.00 Outside Bank Manual Bill Payment
If you have a VISA check card from our bank, there is no usage fee at any Midwest Bank ATM machines.  Charges vary at ATM machines owned by other financial organizations.

This account consists of a checking sub-account and a savings sub-account. Midwest Bank may periodically transfer funds between these two sub-accounts. On a sixth transfer during a calendar month, any funds in the savings sub-account will be transferred back to the checking sub-account. The savings sub-account will be non-interest bearing. The savings sub-account will be governed by the rules governing our other savings accounts. This process will not affect your available balance, FDIC insurance protection, or your monthly statement.

MIDWEST BANK

114 W MAIN, PO BOX 219
PIERCE, NE 68767-0219

# TRUTH IN SAVINGS DISCLOSURE

Terms following a ☐ apply only if checked.

Acct: MIDWEST FREE CHECKING5

Acct # __ __ _____

Date: _____        _____

☐ The interest rate and annual percentage yield stated below are accurate as of the date printed above. If you would like more current rate and yield
information please call us at (402) 329-6221 .

This disclosure contains the rules which govern your deposit account. Unless it would be inconsistent to do so, words and phrases used in this disclosure should be construed so that the singular includes the plural and the plural includes the singular.

We reserve the right to at any time require not less than N/A days notice in writing before any withdrawal from an interest bearing account.

☐ **FIXED RATE**

   ☐ The interest rate for your account is _____ % with an annual percentage yield of _____ %. We will pay this rate _____
   We will not decrease this rate unless we first give you at least 30 days notice in writing.

   ☐ The interest rate and annual percentage yield for your account depend upon the applicable rate tier. We will pay these rates _____
   _____.
   We will not decrease these rates unless we first give you at least 30 days notice in writing.

☐ **VARIABLE RATE**

   ☐ The interest rate for your account is _____.00% % with an annual percentage yield of_____.00% %. Your interest rate and annual percentage yield may change.

   ☐ The interest rate and annual percentage yield for your account depend upon the applicable rate tier. The interest rate and annual percentage yield for these tiers may change.

**Determination of rate**

   ☐ At our discretion, we may change the interest rate on your account.

   ☐ The interest rate for your account _____
   _____
   _____
   _____

   ☐ The fixed initial rate is not determined by this rule.

   ☐ The initial interest rate on your account _____
   _____
   _____
   _____

   Subsequent rates _____
   _____ .

**Frequency of rate change**

   ☐ We may change the interest rate on your account _____
   _____
   _____ .

   ☐ Your initial interest rate will not change _____
   _____ .

We may change the interest rate on your account at that time and _____ thereafter.

**Limitations on rate changes**

   ☐ The interest rate for your account will not_____
   by more than _____ each _____ .

   ☐ The interest rate will not be less than _____ %
   or more than _____ %.

   ☐ The interest rate will not _____
   _____
   _____

   the interest rate initially disclosed to you.

**Minimum Balance Requirements**

   ☒ *To open the account.* You must deposit at least
   $ 100.00 _____ to open this account.

   ☐ *To avoid imposition of fees.*

   To avoid the imposition of the _____ you
   must meet _____ following requirements:

      ☐ A _____ of $ _____
      will be imposed every _____
      if the balance in the account falls below $ _____
      any day of the _____ .

      ☐ A _____ of $ _____
      will be imposed every _____
      if the average daily balance for the _____
      _____ falls below $ _____ . The
      average daily balance is calculated by adding the principal in
      the account for each day of the period and dividing that figure
      by the number of days in the period.

      The period we use is _____ .

   To avoid the imposition of the_____ you
   must meet _____ following requirements:

      ☐ A _____ of $ _____
      will be imposed for _____
      transaction (withdrawal, check paid, automatic transfer or
      payment out of your account) if the balance in the account

      falls below $ _____ any day of the _____
      _____ .

      ☐ A _____ of $ _____
      will be imposed for _____
      transaction (withdrawal, check paid, automatic transfer or
      payment out of your account) if the average daily balance for
      the _____ falls below

$_____. The average daily balance is calculated by adding the principal in the account for each day of the period and dividing that figure by the number of days in the period.

The period we use is _____ .

☐1 *To obtain the annual percentage yield disclosed.*

☐ You must maintain a minimum balance of

$_____ in the account each day to obtain the disclosed annual percentage yield.

☐ You must maintain a minimum average daily balance of

$_____ to obtain the disclosed annual percentage yield. The average daily balance is calculated by adding the principal in the account for each day of the period and dividing that figure by the number of days in the period.

The period we use is _____ .

**Compounding and Crediting**

☐ *Frequency* - Interest _____ be

compounded _____

Interest will be _____

_____

☐ *Effect of closing an account* - If you close your account

before interest is credited, you _____

receive the accrued interest.

**Balance Computation Method**

☐ *Daily Balance Method.* We use the daily balance method to calculate the interest on your account. This method applies a daily periodic rate to the principal in the account each day.

☐ *Average Daily Balance Method.* We use the average daily balance method to calculate interest on your account. This method applies a periodic rate to the average daily balance in the account for the period. The average daily balance is calculated by adding the principal in the account for each day of the period and dividing that figure by the number of days in the period.

The period we use is _____ .

**Accrual of interest on noncash deposits**

☐ Interest begins to accrue no later than the business day we receive credit for the deposit of noncash items (for example, checks).

☐ Interest begins to accrue _____

_____

_____

you deposit noncash items (for example, checks).

**Bonuses**

☐ You will _____ _____

as a bonus _____ .

☐ You must maintain a minimum _____

_____ of $ _____

to obtain the bonus.

☒ To earn the bonus, of $25.00 or $100.00, SEE MIDWEST BANK PROMOTION DISCLOSURE _____

_____

_____ .

**Transaction Limitations**

☐ The minimum amount you may deposit is

$_____ .

☐ The minimum amount you may withdraw is

$_____ .

☐ During any _____ ,

you may not make more than _____

withdrawals or transfers to another account of yours or to a third party by means of a preauthorized or automatic transfer or telephone order or instruction, computer transfer, or by check, draft, debit card or similar order to a third party.

☐ _____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

☐ You may only make _____ deposits into your account each statement cycle.

☐ You may only make _____ ATM _____

your account each statement cycle.

☐ You may only make _____ preauthorized transfers

_____ your account each statement cycle.

**Additional Terms**

DISCLOSURE TERMS-NO REQUIRED MINIMUM BALANCE

NO SERVICE CHARGE

DETAILED MONTHLY IMAGE STATEMENT AVAILABLE ONLINE

FREE BASIC IMPRINTED CHECKS—SHIPPING & HANDLING

CHARGE $5.00 WALLET, $10.00 DUPLICATE

FREE VISA DEBIT CARD

FREE SAFE DEPOSIT BOX FOR 1 YEAR (AS AVAILABLE)

FREE DIRECT DEPOSIT

Dormant accounts with 6 months inactivity and less than $100.00 on deposit will be charged a Dormant Account Fee of $5.00 per month. Children under 18 are excluded from the Dormant Account Fee.